## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **BRIAN ANTHONY HOLB** | : | **CASE NO.** |
| **1353 Aster Ave.** | : | |
| **Akron, OH 44301** | : | |
| | : | **JUDGE:** |
| **PLAINTIFF,** | : | |
| | : | **MAGISTRATE JUDGE:** |
| **v.** | : | |
| | : | |
| **DONNIE KAMMER, in his Individual** | : | |
| **and Official Capacities as City of Akron** | : | |
| **Councilman for Ward 7** | : | **COMPLAINT AND JURY DEMAND** |
| **166 South High St.** | : | |
| **Akron, OH 44308** | : | |
| | : | |
| **DEFENDANT.** | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |

Plaintiff Brian Anthony Holb, for his causes of action against Defendant state as follows:

## NATURE OF ACTION

1.  In this 42 U.S.C. 1983 official capacity suit, Plaintiff seeks declaratory and injunctive relief under the First and Fourteenth Amendments to the United States Constitution, alleging that Defendant, acting under color or law, deprived Plaintiff of his right to free speech and due process as protected by the First and Fourteenth Amendments to the United States Constitution, by banning him from posting comments on the Official Facebook Page for Councilman Kammer ("Official Page") and deleting comments previously posted. Plaintiff, Brian Anthony Holb ("Plaintiff") is a constituent of Akron City Council Ward 7. Defendant Donnie Kammer ("Defendant"), is the Akron City Councilman for Ward 7.

## JURISDICTION AND VENUE

2.  This action arises out of the First and Fourteenth Amendments to the United States Constitution.

3.  This Court has original jurisdiction pursuant to 28 U.S.C. 1331 and 1343.

4.  The Court is empowered to exercise supplemental jurisdiction over Plaintiff's remaining state law claims under 28 U.S.C. 1367 on the grounds that they are so related to the federal claims, over which the Court has original jurisdiction, that they form part of the same case or controversy.

5.  Venue is proper in this Court pursuant to 28 U.S.C. 1331 and 1343. Defendant lives in and represents constituents found within the Northern District of Ohio.  Additionally, the acts giving rise to this action occurred within this district and venue.  Therefore, venue is proper in this Court pursuant to 28 U.S.C. 1391(b).

## PARTIES

6.  Plaintiff is a resident and citizen of Akron City Council Ward 7.  Plaintiff has taken an interest in politics as a concerned citizen.

7.  Defendant is currently, and at all times pertinent to the claims herein, has been the Akron City Councilman for Ward 7.  He is sued in his individual and official capacities.

## STATEMENT OF FACTS

8.  Plaintiff incorporates Paragraphs 1-8 by reference.

9.  Defendant is the administrator or otherwise exercises control over a public Facebook Page in his capacity as Akron City Councilman for Ward 7.  The web address for the page is https://www.facebook.com/Donnie-Kammer.

10. The "About" section of the Official Page indicates that Defendant is a Government Official as the Akron City Councilman for Ward 7 and includes professional photographs of

Defendant. The Official Page is designated as "Politician." Several posts on the Official Page provide Defendant's official government email address and direct constituents to that address. Defendant posts about official meetings and actions he has taken as Councilman.

11. Defendant invites constituents and the general public to contact him, among other ways, through his Official Page.

12. On information and belief, members of Akron City Council regularly use Facebook as a forum to communicate with constituents and the public regarding legislative matters and other matters of public import.

13. Defendant's Official Page does not include a disclaimer or otherwise provide and limitation as to the topics or subject matter that may be discussed, what speech is subject to removal, or what online conduct may result in being banned.

14. Defendant uses this Official Page to share legislative updates, political goals, accomplishments, campaign information, his events in Ward 7, and official meetings.

15. The Facebook Terms of Service stipulate that users will not "post content or take any action on Facebook that infringes on or violates someone else's rights or otherwise violates the law." At all relevant times, Plaintiff complied with this admonition.

16. Any person, including those who do not have Facebook accounts, may access the Official Page and view content. The Official Page is effectively a public forum as it has been set up to engage residents of Ward 7 and members of the public in discourse regarding Ward 7 and City of Akron legislative matters and other matters of public import.

17. Any Facebook user who "follows" Defendant's Official Page will see Defendant's posts on his or her personal Facebook timeline.

18. Administrators of Official Pages have the ability to manage their Page. This includes publishing comments for public comment, deleting the published comments of others,

and/or banning users from the Official Page.  Banning a user does not make the Official Page inaccessible to the banned user, but instead, fully removes the banned user's ability to publish a comment to any post or engage in discussions on the Official Page. A banned user is silenced.

19. Defendant also operates a personal Facebook Page ("Personal Page").  The Personal Page is named "Donnie Kammer Jr."  Defendant uses the Personal Page to share personal views as well as campaign and official information.

20. Administrators of Personal Pages have the ability to manage that Page.  This includes blocking users from their Personal Page.  Blocking a user makes the Personal Page inaccessible to the blocked user.

21. Upon information and belief, Defendant has "linked" his Official page and his Personal Page so that he can operate and manage each page using a single Facebook login.  Because this Pages are linked, Defendant can toggle back and forth between his Official Page and his Personal Page under the same Facebook profile with just two clicks of the mouse. Defendant is the administrator for both his Official Page and his Personal Page or otherwise exercises control over those Facebook sites.

22. When a user has linked his Pages, comments published to a Facebook post can be published from either his Official Page or his Personal Page.

23. Defendant has the ability to toggle between commenting from his Official Page or his Personal Page each time he published a comment on the Official Page. Defendant's official headshot accompanies comments made from Defendant's Official Page.  Defendant's personal profile picture accompanies comments made from Defendant's Personal Page.

24. Plaintiff, a constituent of Ward 7, began to "follow" Defendant's official Facebook Page in 2017.

25. When a Facebook user "follows" his or her elected representatives, a small "badge" icon appears to the right of the user's name when posting comments.  This badge indicates that the user is verified as a constituent of that elected official's district.

26. On January 19, 2019, Defendant posted on his Official Page a picture with Defendant and State Representative for Ohio's 35th District Tavia Galonski letting residents know they would be holding open office hours together at the Firestone Park Library on Wednesday, February 13, 2019 from 5 p.m. – 6 p.m.

27. On January 19, 2019, Plaintiff posted comments about addressing issues like litter, murder, robberies, and speeding occurring in the neighborhood instead of focusing on spending time and money putting flags on a bridge.

28. After Plaintiff posted his comments on Defendant's Official Page, Defendant unilaterally banned Plaintiff from the Official Page.  Although Plaintiff was and still is able to view the Official Page, he was blocked from publishing comments and engaging in discussion on matters of public concern on that public forum.  The "Comment" box was altogether removed from Plaintiff's personal Facebook interfaces when he accesses the Official Page, preventing any comments from being posted by Plaintiff on Defendant's Official Page.

29. Plaintiff also noticed the comments he posted just minutes prior on the Official Page were no longer visible on the Official Page, as they had been hidden or deleted by Defendant or at Defendant's direction.

30. On January 19, 2019, Plaintiff sent an email to Defendant's official city email address asking Defendant to unblock Plaintiff and restore Plaintiff's comments.

31. On information and belief, one or more other individuals who posted critical comments on Defendant's Official Page were also banned or blocked from posting comments.

32. Based on his observation of the site, Plaintiff does not believe any comments supporting

Defendant's view have been similarly deleted.

33. Defendant's ban of Plaintiff has continued to date, preventing Plaintiff from commenting on matters of public import or otherwise engaging in public discourse on such matters on the Defendant's Official Page.

34. In banning Plaintiff and others from his Official Page and in deleting comments that were critical of Defendant's actions or lack thereof, Defendant's decision to ban some individuals, including Plaintiff, and deleting some comments from the Official Page, discriminates against Plaintiff and other users on the basis of their viewpoints and the content of their comments.

35. At no time did Defendant provide Plaintiff with notice of the ban or a statement of the reasons therefor, nor did Defendant afford Plaintiff any opportunity to contest the ban.

36. Defendant's intentional deletion of comments and the subsequent ban of Plaintiff from Defendant's Official Page denied and continues to deny Plaintiff his right to free speech in a public forum on matters of public concern, as well as his right to due process.

37. At all relevant times Defendant was and is acting under color of state law by virtue of his conduct as an Akron City Councilman in establishing and controlling his Official Page in the manner described above.

38. At all relevant times, Defendant's conduct as described herein occurred in violation of rights clearly established by the decisions of the Supreme Court of the United States and the Sixth Circuit Court of Appeals and other relevant jurisprudence.

39. As a direct and proximate result of Defendant's conduct as described herein, Plaintiff has suffered loss of his constitutional right to freely express himself and suffered serious distress and humiliation all to Plaintiff's damage in an amount to be determined by the evidence at trial.

## COUNT I – 42 U.S.C. 1983

**Violation of Plaintiff's Right to Freedom of Speech Guaranteed by the First Amendment of the United States Constitution**

40. Plaintiff incorporates all factual allegations set out above.

41. Defendant encouraged, solicited, and allowed public comments and discussion on his Official Page.

42. The social media forum as established and operated by Defendant was and is a public forum or designated public forum. Citizens' views, comments, and opinions expressed thereon are expression of political speech protected by the First Amendment of the United States Constitution.

43. The deletion of Plaintiff's comments on the Official Page is viewpoint discrimination and done in retaliation for Plaintiff's lawful expression of his political views and criticism of Defendant's actions or lack thereof. Plaintiff's right to join and participate in discussion on the public forum established by Defendant, subject to reasonable rules not inconsistent with the Constitution, is protected by the First Amendment of the United States Constitution as applied to the states by the Fourteenth Amendment.

44. Deleting Plaintiff's comments from Defendant's Official Page, as described above, because of the views expressed therein, constitutes content and viewpoint discrimination for which there is no compelling state interest or justification.

45. The banning of Plaintiff from participation from all public discourse on Defendant's Official Page, as described above, constitutes prior restraint of expression, for which there is no compelling state interest or justification.

46. Defendant either personally made or ratified the decision to undertake the acts against Plaintiff by banning Plaintiff from Defendant's Official Page, deleting comments and failing to restore their previously published comments.

47. Defendant's conduct acting under color of state law, has violated, and continues to violate, Plaintiff's right of free speech protected by the First Amendment.

48. The violation of Plaintiff's free speech is continuing and will continue without intervention of this Court.

49. As a direct and proximate cause of Defendant's unlawful conduct, Plaintiff has suffered and will continue to suffer irreparable harm.

## COUNT II – 42 U.S.C. 1983

### Violation of Plaintiff's Dues Process Rights Guaranteed by the Fourteenth Amendment of the United States Constitution

50. Plaintiff incorporates all factual allegations set out above.

51. Defendant deleted Plaintiff's constitutionally protected speech on his Official Page in the manner described above without prior notice and without providing any opportunity to respond or contest the decision.

52. Defendant provided no notice to Plaintiff that he had been banned from the public forum or that his protected speech had been deleted or hidden.

53. Plaintiff's due process rights guarantee notice and an opportunity to be heard before he or she is deprived of any significant liberty or property interest.

54. Defendant's acts were willful, wanton, and in reckless disregard of Plaintiff's rights.

55. As a direct and proximate cause of Defendant's unlawful conduct, Plaintiff has been and continues to be irreparably harmed in the manner described above.

## COUNT III – 42 U.S.C. 1983

### Violation of Plaintiff's Rights to Freedom of Speech Guaranteed by the First Amendment of the United State Constitution

56. Plaintiff incorporates all factual allegations set out above.

57. The posting of the comment by Plaintiff on January 19, 2019 in polite response to

Defendant's post on the subject of a public meeting was protected political speech.

58. The immediate banning of Plaintiff from Defendant's Official Page, and Defendant's deleting of Plaintiff's comments was retaliatory, and done for the sake of censoring the speaker and his protected speech.

59. Such speech retaliation is in violation of Plaintiff's rights under the First Amendment to speak and have his speech heard.

## RELIEF

WHEREFORE, Plaintiff demands the following relief:

60. A temporary restraining order, preliminary and permanent injunction, enjoining Defendant from continuing to ban or block Plaintiff from Defendant's Official Page or posting comments thereon and affirmatively requiring Defendant to restore Plaintiff's deleted comments to the comment section of Defendant's Official Page.

61. An award of compensatory damages in an amount to be determined by the evidence at trial.

62. An award of punitive damages in an amount to be determined by the evidence at trial.

63. An award of attorney's fees and costs in addition to all other relief to which Plaintiff is entitled.

Respectfully submitted,

*/s/ Brian A. Holb*
Brian A. Holb (096791)
1353 Aster Ave.
Akron, OH 44301
330.715.1076
bholb30@gmail.com

## JURY DEMAND

Pursuant to Civ. R. 38, Plaintiff herewith demands that all issues of fact in the foregoing Complaint

be tried to a jury.

*/s/ Brian A. Holb*